## ALMA S. JOHNSTON AND ANOTHER v. GEORGE S. JOHNSTON AND ANOTHER.[1]

October 11, 1935.

No. 30,452.

*Charles Spillane,* for appellants.

*John R. Bullard* and *Gallagher, Madden & Gallagher,* for respondent W. C. Johnston.

*H. H. Sturner,* for respondent George S. Johnston.

LORING, JUSTICE.

This is an action to cancel and set aside a deed given by plaintiffs to defendant George S. Johnston and for the purpose of setting aside a mortgage on the deeded premises given by him to defendant W. C. Johnston. From a judgment in favor of the defendants this appeal is taken.

Jane Cornelia Johnston, on and prior to June 2, 1908, was the owner of the 80-acre tract of land here in controversy. On that

[1]Reported in 262 N. W. 566.

date she conveyed it to her son, defendant W. C. Johnston. Alma S. Johnston and Nellie Johnston were sisters of W. C. Johnston and daughters of Jane Cornelia. September 26, 1908, Jane Cornelia and W. C. Johnston, his wife joining, conveyed the land to Alma S. and Nellie Johnston, each grantee taking an undivided one-half interest in the farm. Defendant George S. Johnston is the son of Alma S. and George W. Johnston, and August 7, 1916, they conveyed their undivided one-half interest to him. The deed contained the following provision:

"Provided, however, that the within conveyance is made on the part of the parties of the first part, grantors, and as a further consideration that the party of the second part provide for the support and maintenance of the parties of the first part for and during the period of the natural life of said parties of the first part and each of them."

On the same date Nellie Johnston, then Mrs. Walter Glendenning, conveyed her undivided one-half interest in this property to the four sons of defendant W. C. Johnston.

George S. Johnston did not take possession of the land immediately after execution of the 1916 deed, but his parents stayed on and worked the land until 1923, living in buildings on a three-acre tract adjoining the property, owned by Alma S. From that time until 1927 the farm was rented and the rent divided between the plaintiffs and the Glendennings. (The reason for the rent going to the Glendennings instead of the sons of W. C. Johnston is not disclosed.) George S. took possession of the farm in 1927, worked the land, and lived in the house on the three-acre tract adjoining it. His parents spent the winters in a small place of theirs in California, returning for the summers from 1927 to 1932 to live with George S. on the three-acre tract.

W. C. Johnston acquired and paid for the interest of his sons which they had by the grant from Nellie Johnston. He conveyed this to George S., taking a mortgage on the entire tract for the purchase price of $4,000. At the time of this transaction W. C. Johnston found that George S. owed the Security State Bank of Waseca

$775 secured by a mortgage on his undivided one-half interest. W. C. paid this debt and included it in his mortgage, making it $4,774.50. This mortgage was dated October 29, 1927. February 11, 1933, he foreclosed it, and the period of redemption expired in 1934 prior to the starting of this suit. Plaintiffs base this action on an alleged breach of the covenant in their deed to George S. which provided for their support and maintenance.

1. At all times since 1927 when plaintiffs were living in Minnesota they resided with their son on the three-acre tract adjoining the disputed property. The plaintiffs were furnished maintenance, most of the food being produced on the three-acre tract or on the farm. During that time they were not furnished clothes, but, as Alma S. testified: "I had no clothing, I just made what I had do." It is estimated by both plaintiffs and George S. that during the time from 1927 until the foreclosure of the mortgage George S. had also given them about $150 in cash. George W., the father, estimated that a dollar a day for support and maintenance of his wife and himself would provide them with necessities.

Although it is quite apparent that the plaintiffs were not maintained in luxury, the necessities of life were furnished them. It seems also that the problem of clothing them was not a vital matter since Mrs. Johnston was sufficiently provided. No complaint is made about her husband's clothes. The period over which this default in the agreement is said to have occurred was one of economic stress, and farming conditions were such that many of those engaged in that pursuit were forced to curtail expenses. A great many farmers "made what they had do." Mrs. Johnston repeatedly testified that she knew that George S. was doing the best he could under the circumstances.

The trial court found that there had been no breach of the covenant, and there is evidence to support this finding.

2. Should there be a breach of the agreement for support, the old people have a lien against the property paramount to any subsequent encumbrance. Doescher v. Spratt, 61 Minn. 326, 63 N. W. 736; Childs v. Rue, 84 Minn. 323, 87 N. W. 918. The courts are jealous to protect the interests of old people in cases of this nature,

and equity will protect their lien in an appropriate suit if it becomes necessary. George S. may be able to fulfil his contract for maintenance and support in other ways than by farming this land. He has that privilege. If he does not the plaintiffs have their remedy.

On the record before us the judgment must be affirmed.